# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-21-00033-CV

---

**Michael Quinn Sullivan, Appellant**

**v.**

**Texas Ethics Commission, Appellee**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-001878, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## O P I N I O N

Michael Quinn Sullivan appeals from the trial court's summary judgment determining that Sullivan is liable to the Texas Ethics Commission for a civil penalty for failing to register as a lobbyist. *See* Tex. Gov't Code §§ 305.003(a)(2), .032. In a de novo appeal to the trial court of the Commission's final administrative order concluding that Sullivan violated the lobbyist-registration statute, Sullivan lodged constitutional challenges to the statute, which the trial court determined had no merit. On appeal to this Court, Sullivan raises the same constitutional issues and challenges the trial court's jurisdiction over this cause, the sufficiency of the evidence supporting the judgment, and the amount of penalty. For the following reasons, we reverse the portion of the trial court's summary judgment assessing a $10,000 penalty and remand that issue for further proceedings. We affirm the remainder of the trial court's judgment.

## BACKGROUND

The Commission was created in 1991 by a constitutional amendment. *See* Tex. Const. art. III, § 24a; *see also* Tex. Gov't Code § 571.021 ("This chapter applies to the Texas Ethics Commission created under Article III, Section 24a, of the Texas Constitution."). Chapter 571 of the Government Code provides for the Commission's powers, duties, and procedures related to administration and enforcement of the statutes under its purview, *see* Tex. Gov't Code §§ 571.002–.177, and expressly endows it with administrative and enforcement authority over specified chapters of the Government and Election Codes, *see id.* § 571.061 ("Laws Administered and Enforced by the Commission"). Among those is Chapter 305 ("Registration of Lobbyists") of the Government Code, requiring lobbyists to register with the Commission and pay a specified fee. *See id.* §§ 305.003 (the registration statute), .005 (the fee statute). The policy underlying Chapter 305 attempts to balance individuals' rights to "petition their government for the redress of grievances and to express freely their opinions" to legislators and other government officers while "preserv[ing] and maintain[ing] the integrity of the legislative and administrative processes" by requiring public disclosure of the identity, expenditures, and activities of certain persons who engage in direct communication with government officers to persuade them to take specific actions. *See id.* § 305.001; *see also id.* § 571.001 (noting purpose of Chapter 571 is to "protect the constitutional privilege of free suffrage by regulating elections and prohibiting undue influence while also protecting the constitutional right of the governed to apply to their government for the redress of grievances").

This dispute centers on Sullivan's failure to register as a lobbyist in 2010 and 2011, when he was president and CEO of Empower Texans, Inc. Empower Texans, also doing business as Texans for Fiscal Responsibility, is a non-profit corporation that has described itself

2

as promoting a legislative agenda of "free market solutions," "low taxes," and "responsible government." The undisputed summary-judgment evidence shows that Sullivan, acting on behalf of Empower Texans in 2010 and 2011, sent over a dozen communications to members of the Texas House of Representatives and Senate and their staffs that encouraged recipients to support or oppose specific legislation or other matters pending in the legislature—consistent with Empower Texans's stated priorities—and to contact him with any questions about the organization's positions.[1]

Although he registered as a lobbyist on behalf of Empower Texans from 2001 to 2009, Sullivan did not register in 2010 and 2011. For lobbyists employed by non-profit corporations, like Sullivan, the registration fee during those years was $100. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 899, § 1.01, 2005 Tex. Gen. Laws 3098, 3098 (current version, requiring fee of $150 for those lobbying for non-profit corporations, at Tex. Gov't Code § 305.005(c)(1)). In April 2012, the Commission received two sworn complaints filed by Texas legislators alleging that Sullivan violated Chapter 305 of the Government Code. *See* Tex. Gov't Code § 305.035 (providing that Commission, attorney general, or any county or district attorney may enforce chapter and for filing of sworn statements with appropriate prosecuting attorney or Commission alleging violation of chapter). After a formal hearing, the Commission issued its final order in July 2014 concluding that Sullivan violated the registration statute for both years and was required to pay a statutory penalty of $5,000 per violation. *See id.* § 571.132 ("Formal Hearing: Resolution"). Sullivan filed a de novo appeal from that order in Denton County district

---

[1] In his response to the Commission's summary-judgment motion, Sullivan lodged objections to some of the Commission's evidence. Sullivan neither identifies in the record any rulings by the trial court on his objections nor raises any appellate issues in connection therewith. *See* Tex. R. App. P. 33.1 (requiring preservation of error), 38.1 (listing requirements of appellant's brief). We therefore consider all the Commission's evidence accompanying its motion as well as the evidence Sullivan attached to his motion that was included in the appellate record.

3

court, *see id.* § 571.133 ("Appeal of Final Decision"); the Commission prevailed on its motion to transfer venue to Travis County, arguing that Sullivan did not reside in Denton County, *see id.*; and Sullivan unsuccessfully attempted to dismiss his own de novo appeal under the Texas Citizens Participation Act (TCPA), *see Sullivan v. Texas Ethics Comm'n*, 551 S.W.3d 848, 851–52 (Tex. App.—Austin 2018, pet. denied).

On remand from this Court, Sullivan's de novo appeal of the Commission's order was litigated in tandem with a related matter in which Sullivan and Empower Texans sought a declaratory judgment that the Commission's enforcement authority is unconstitutional because it violates the separation-of-powers provision in the Texas Constitution. Sullivan's and Empower Texans's appeal of the trial court's ruling on the related declaratory-judgment matter is currently pending at the Eighth Court of Appeals in Cause Number 08-20-00153-CV. As for this cause, Sullivan and the Commission filed with the trial court competing motions for summary judgment. The trial court granted the Commission's motion, denied Sullivan's, and decreed that Sullivan is liable to the Commission for a $5,000 civil penalty for each of the two years at issue. Sullivan perfected this appeal.

## DISCUSSION

The registration statute provides, in relevant part,

(a) A person must register with the commission under this chapter if the person:

> (1) makes a total expenditure of an amount determined by commission rule but not less than $200 in a calendar quarter, not including the person's own travel, food, or lodging expenses or the person's own membership dues, on activities described in Section 305.006(b) to communicate directly with one or more members of the legislative or executive branch to influence legislation or administrative action; or

4

(2)    receives, or is entitled to receive under an agreement under which the person is retained or employed, compensation or reimbursement, not including reimbursement for the person's own travel, food, or lodging expenses or the person's own membership dues, of more than an amount determined by commission rule but not less than $200 in a calendar quarter from another person to communicate directly with a member of the legislative or executive branch to influence legislation or administrative action.

(b)    Subsection (a)(2) requires a person to register if the person, as part of his regular employment, has communicated directly with a member of the legislative or executive branch to influence legislation or administrative action on behalf of the person by whom he is compensated or reimbursed, whether or not the person receives any compensation for the communication in addition to the salary for that regular employment.

Tex. Gov't Code § 305.003 ("Persons Required to Register"). In its summary-judgment motion, the Commission asserted that its attached evidence conclusively established each of the statutory elements requiring Sullivan to register for years 2010 and 2011 and that he was, therefore, "liable for the civil penalty provided for by statute."[2] *See id.* §§ 305.032 ("Civil Penalty for Failure to Register"), 571.173 ("Civil Penalty for Delay or Violation").

In his summary-judgment motion, Sullivan prayed for the court to order that the Commission "take nothing by its claims" because (1) it would be unconstitutional for the Commission to "carry forward this case" in violation of the Texas Constitution's separation-of-powers provision; (2) the registration and fee statutes are unconstitutional facially and as applied to him; and (3) the Commission was seeking to impose a criminal penalty on him that is neither authorized by statute nor brought in a proceeding affording him adequate due process.

---

[2] In its live pleading "as realigned plaintiff" in Sullivan's de novo appeal of its order, the Commission pleaded two causes of action—Sullivan's failure to register for years 2010 and 2011—and sought the "imposition of a civil penalty" on Sullivan pursuant to Government Code Section 305.032 "in an amount not to exceed $5,000."

This Court reviews an order granting or denying a motion for summary judgment de novo. *Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). When both parties move for summary judgment and the trial court grants one motion and denies the other, we "review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered." *Id.*

### First Amendment challenge

In his first issue, Sullivan contends that the registration and fee statutes violate the First Amendment both facially and as applied to him. He lodges both a "typical facial attack" and a facial attack under the "overbreadth" doctrine. *See United States v. Stevens*, 559 U.S. 460, 472–73 (2010) (explaining two types of facial challenges). We first note that in considering challenges to the constitutionality of a statute, we presume that the statute is constitutional and "must, if possible, construe statutes to avoid constitutional infirmities." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996); *see also* Tex. Gov't Code § 311.021(1) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended.").

The U.S. Supreme Court has upheld federal lobbyist-registration laws against First Amendment challenges, *see United States v. Harriss*, 347 U.S. 612, 625 (1954) (noting that Congress had thereby "merely provided for a modicum of information from those who for hire attempt to influence legislation or who collect or spend funds for that purpose"), and has explained that requiring disclosure of First Amendment activities (such as lobbying or making political advertisements) is a "less restrictive alternative to more comprehensive regulations of speech," *see Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 369 (2010). That high court has determined that disclosure statutes—those that require persons to reveal their identity

and divulge their First Amendment activities—are subject to review under the legal standard known as "exacting scrutiny."[3] *See Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383–85 (2021). That is, there must be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest," and the disclosure requirement must "be narrowly tailored to the interest it protects." *Id.* at 2385. A restriction is "narrowly tailored" when it does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward v. Rock Against Racism*, 491 U.S. 781, 798–99 (1989); *Ex parte Lee,* 617 S.W.3d 154, 161 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (citing *McCullen v. Coakley*, 573 U.S. 464, 486 (2014)). "In the context of intermediate [i.e., exacting] scrutiny, narrow tailoring does not require that the least restrictive means be used. As long as the restriction promotes a substantial governmental interest that would be achieved less effectively without the restriction, it is sufficiently narrowly tailored." *Service Emp. Int'l Union, Local 5  v. City of Houston (SEIU)*, 595 F.3d 588, 596 (5th Cir. 2010) (citing *Ward*, 491 U.S. at 799).

Sullivan acknowledges that the Supreme Court has upheld the federal lobbyist-registration statutes, *see Harriss*, 347 U.S. at 613, but contends that Texas's statutes are "unique" in that they (1) require a fee (while registration under the federal scheme is free) and (2) require registration of persons who, like Sullivan, are employees and officers of the organization on whose behalf they lobby (and from whom they receive compensation therefor) but who do not

---

[3] Sullivan argues that the registration statute is "content-based" rather than "content-neutral" and, therefore, that the applicable standard of review is the more rigorous "strict scrutiny." *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163–64 (2015). However, the U.S. Supreme Court has drawn a distinction and has expressly applied the exacting-scrutiny standard to disclosure and registration statutes because they "do not prevent anyone from speaking." *See Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 366–67 (2010) (citations omitted); *see also Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2383–85 (2021) (reaffirming standard); *Calzone v. Summers*, 942 F.3d 415, 423 (8th Cir. 2019) (reviewing Missouri's lobbyist-registration law under exacting-scrutiny standard).

make any expenditures in connection with their speech. While he is correct that the federal statute does not require payment of a registration fee, *see* 2 U.S.C. §§ 1601–1614 (comprising Chapter 26, entitled "Disclosure of Lobbying Activities," of Title 2 of the U.S. Code), he is incorrect that the federal statute does not require registration of persons who lobby on behalf of their employers but make no related expenditures, *see id.* §§ 1602 (defining "client" to include "person or entity whose employees act as lobbyists on its own behalf"), 1603 (requiring "lobbyist" who is employed to make "lobbying contact" to register unless such person's total income for matters related to "lobbying activities on behalf of a particular client" does not exceed $2,500 per quarter); *Harriss*, 347 U.S. at 614 & n.1 (reciting text of then-effective statute as similarly requiring registration by persons "receiving any contributions" above specified threshold for purpose of "influenc[ing], directly or indirectly, the passage or defeat of any legislation").

Besides his latter incorrect assertion, Sullivan relies on an opinion from the Eighth Circuit holding Missouri's lobbyist-registration statute facially unconstitutional, but that case is distinguishable because the statute at issue there required registration (and payment of a filing fee) of a person who "neither spends nor receives money in connection with his advocacy." *Calzone v. Summers*, 942 F.3d 415, 424 (8th Cir. 2019). The Eighth Circuit acknowledged the legitimate governmental interest of the "specter" of corruption or its appearance, and expressly based its holding on the fact that the statute targeted lobbyists who neither receive nor spend money in an attempt to influence legislators. *See id.* Because that statute cast its net too broadly to include persons who neither receive any compensation nor make any expenditures in connection with their lobbying, it was not narrowly tailored. *See id.*

8

Unlike the statute in *Calzone* but like the federal statute, the Texas registration statute does not apply unless a person, in the course of lobbying, *either* "makes a total expenditure" *or* "receives, or is entitled to receive, . . . compensation or reimbursement" at or above the threshold levels specified by statute and the Commission's rules. *See* Tex. Gov't Code § 305.003; 1 Tex. Admin. Code § 34.43 (Tex. Ethics Comm'n, Compensation & Reimbursement Threshold) (2022). This is the type of regulation—directed towards the exchange of money for lobbying communications—the U.S. Supreme Court has determined passes constitutional muster because it advances substantial governmental interests. *See Harriss*, 347 U.S. at 625 ("[T]he evil which the Lobbying Act was designed to help prevent" is that "the voice of the people may all too easily be drowned out by the voice of special interest groups seeking favored treatment while masquerading as proponents of the public weal."); *see also* Tex. Gov't Code §§ 305.001 (noting policy of lobbyist regulations to include "preserv[ing] and maintain[ing] the integrity of the legislative . . . processes"), 571.001 (noting that purpose of chapter includes "prohibiting undue influence while also protecting the constitutional right of the governed to apply to their government for the redress of grievances"); *Osterberg v. Peca*, 12 S.W.3d 31, 44 (Tex. 2000) (upholding Texas's election-expenditure reporting requirements as "reasonable and minimally restrictive method of furthering First Amendment values by opening the basic processes of [the] election system to public view" (quoting *Buckley v. Valeo*, 424 U.S. 1, 82 (1976))); *Florida League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 460 (11th Cir. 1996) (collecting cases and noting that "[s]everal other courts have similarly interpreted *Harriss* and have rejected broad constitutional attacks on lobbying disclosure requirements").

The Texas registration statute neither prohibits any speech nor requires registration by a person communicating with legislators in an attempt to influence legislation

9

when done solely for oneself—an activity that lies at the heart of the First Amendment. *See* U.S. Const. amend. I (outlining rights to free speech and to petition government for redress of grievances). Rather, the statute promotes transparency and integrity in the legislative process through its registration requirements when a person makes such communications not on one's own behalf but as the paid mouthpiece of another. As the U.S. Supreme Court held many decades ago, and in analogous cases since, such registration requirements do not violate the First Amendment. *See Harriss*, 347 U.S. at 625; *see, e.g.*, *Bonta*, 141 S. Ct. at 2383–85. Following *Harriss*, we hold that the Texas registration statute is not unconstitutional by requiring registration by those who make no expenditures in furtherance of their lobbying activities but are compensated by another person for lobbying on their behalf.

Furthermore, because the registration fee under the Texas statute is both nominal (especially for those who lobby on behalf of non-profits) and significantly less than the compensation or reimbursement threshold that triggers the registration requirement, we conclude that the imposition of the fee is narrowly tailored to meet the legitimate governmental interests noted above. The Commission is charged with administering and enforcing the lobbyist-registration statutes in Chapter 305. It is reasonable to conclude that the Commission incurs administrative costs to carry out its duties and would be less effective at achieving the legislative policies underlying those duties—including the investigation of sworn complaints about individuals allegedly attempting to circumvent those policies—without its collection of the nominal registration fees. *See SEIU*, 595 F.3d at 596 (noting that regulation is narrowly tailored if governmental interest would be less effectively achieved without it). We hold that the registration and fee statutes are not facially unconstitutional.

10

As to Sullivan's overbreadth challenge, the U.S. Supreme Court has noted that application of the doctrine is "strong medicine," has been employed sparingly, and is not invoked when "a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). An overbreadth challenge may succeed "if a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 n.6 (2008). A party claiming overbreadth must establish from the statute's text and "from actual fact" a danger that the statute will be applied unconstitutionally to prohibit a "substantial" amount of protected expression and that such danger is realistic and not based on "fanciful hypotheticals." *See Stevens*, 559 U.S. at 485.

Sullivan argues that the registration statute is unconstitutionally overbroad because it would subject the following persons to the registration requirements: (1) a person employed by his own corporation who makes "a single communication" to a legislator urging legislative action and (2) a journalist who happens to "express an opinion about legislation to a legislator while on the job."[4] However, neither scenario presents any realistic danger that the statute will be applied unconstitutionally. As for the first hypothetical, the statute expressly limits its application to persons who (a) "communicate directly with a member of the legislative or executive branch to influence legislation" and (b) receive above-the-threshold compensation from another person either *explicitly to make such communications* or *as part of their regular*

_____

[4] The statute excepts from the registration requirements a person who "owns, publishes, or is employed by . . . [a] bona fide news medium that in the ordinary course of business disseminates news" or other content that "directly or indirectly oppose[s] or promote[s] legislation or administrative action" from the registration requirement *if* the person does not "engage in further or other activities that require registration under this chapter and does not represent another person in connection with influencing legislation or administrative action." Tex. Gov't Code § 305.004(1) ("Exceptions").

*employment and on behalf of their employer*. *See* Tex. Gov't Code § 305.003 (a)(2), (b). It further provides an exception for a person who demonstrates that he did not spend "more than 26 [compensated] hours, or another amount of time determined by the commission," per quarter engaging in activity—"including preparatory activity" as defined by Commission rule—"to communicate directly" with legislators to influence legislation. *See id.* § 305.003(b-3). Thus, straightforward construction of the statute's definition of "Persons Required to Register" excludes any casual, one-off communications to legislators—even those made by the president of one's own corporation—either (a) in the absence of a showing that the person gets paid more than a specified amount *to make such communications* or (b) if the person at issue demonstrates he does not spend more than a specified amount of time engaging in lobbying activities on behalf of his corporation. *See id.* § 305.003(a)(2), (b), (b-3).

The second hypothetical also does not present any danger of casual, one-off communications triggering the registration requirements. The media exception operates merely as a safe harbor for specified individuals associated with a bona fide news medium whose dissemination of content opposes or promotes legislation *but only if* those individuals do not *also* engage in activities identified in Chapter 305 as requiring registration. *See id.* § 305.004(1). Thus, a hypothetical journalist's promoting or opposing legislation in direct communication with a legislator while acting in the course of investigating or reporting for his "bona fide news medium" would not subject him to the registration requirements unless he also got paid (above the threshold) by that medium or a different individual or entity *to engage in lobbying*. Sullivan argues that the media exception grants a "special privilege" to the media class, making the registration regime unconstitutional, citing *Citizens United*, 558 U.S. at 310 ("We have consistently rejected the proposition that the institutional press has any constitutional privilege

12

beyond that of other speakers."), but the provision in the media exception requiring registration if the journalist engages in any of the activities otherwise requiring registration belies his argument. We hold that the registration statute is not unconstitutionally overbroad.

To succeed on his "as applied" challenge, Sullivan must show that although the registration statute is generally constitutional, it is "unconstitutional because of the way in which [it was] applied to" him in this "particular case." *HCA Healthcare Corp. v. Texas Dep't of Ins.*, 303 S.W.3d 345, 349 (Tex. App.—Austin 2009, no pet.), *abrogated on other grounds by PHI Air Med., LLC v. Texas Mut. Ins.*, 641 S.W.3d 542, 552 (Tex. App.---Austin 2022, no pet.). When considering this challenge, this Court cannot "entertain hypothetical claims or consider the potential impact of the statute on anyone other than" Sullivan. *In re G.X.H.*, 584 S.W.3d 543, 550 (Tex. App.—Houston [14th Dist.] 2019, no pet.), *rev'd on other grounds*, 627 S.W.3d 288 (Tex. 2021).

To the extent that we understand Sullivan's as-applied argument, he appears to be contending that he was entitled to the media exception because he "was engaged in the practice of gathering and reporting news." We need not reach the question of whether the facts support such contention, however, because we have already determined that the presence of the media exception (and one's falling under it) is not the end of the inquiry for whether a person is otherwise engaged in Chapter 305 activities that trigger the registration requirements. We address the question of whether Sullivan was engaged in such activities infra in response to his fifth appellate issue, but we do not see how such argument constitutes an as-applied constitutional challenge.

We overrule Sullivan's first issue.

*Separation-of-powers challenge*

In his second issue, Sullivan argues that the Commission cannot enforce the registration statute because by doing so the Commission—purportedly a "legislative branch agency"—would be violating the Texas Constitution's separation-of-powers provision. *See* Tex. Const. art. II, § 1 (providing for division of State government into "three distinct departments," and that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted"). He supports his argument with the following facts: (1) the provision creating the Commission appears in Article III of the Texas Constitution, entitled "Legislative Department," *see id.* art. III, § 24a; and (2) the Commission is composed entirely of commissioners "nominated" by members of the legislature, with two members appointed directly by the Speaker of the Texas House of Representatives, *see id.* § 24a(a)(1)–(4). Thus, Sullivan concludes, the Commission is an agency of the legislative branch but is statutorily charged with administering and enforcing the registration statute, among others, *see* Tex. Gov't Code § 571.061, and such powers belong exclusively to the executive branch, *see Robertson County v. Wymola*, 17 S.W.3d 334, 341 (Tex. App.—Austin 2000, pet. denied) ("[T]he executive branch . . . is charged with investigating and enforcing the laws of the State."); *see also Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2200 (2020) (describing Consumer Financial Protection Bureau's ability to seek "daunting monetary penalties against private parties on behalf of the United States in federal court" as "a quintessentially executive power"). Therefore, Sullivan argues, the trial court should have granted his summary-judgment motion and denied that of the Commission.

14

"A separation of powers challenge is a challenge to the facial constitutionality of a statute." *Texas Dep't of Fam. & Protective Servs. v. Dickensheets*, 274 S.W.3d 150, 155 (Tex. App.—Houston [1st Dist.] 2008, no pet.). As such, it is the "most difficult challenge to mount successfully," and the Court must presume the statute is constitutional. *Allen v. State*, 614 S.W.3d 736, 741 (Tex. Crim. App. 2019). A violation of the separation-of-powers provision occurs when (1) one branch of government assumes or is delegated a power "more properly attached" to another or (2) "one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers." *Dickensheets*, 274 S.W.3d at 156. In analyzing whether such violation exists, courts should recognize that "all three branches of government are to some extent interdependent." *Government Servs. Ins. Underwriters v. Jones*, 368 S.W.2d 560, 564 (Tex. 1963). "[I]t is well established that [the separation of powers] states a principle of government and not a rigid classification as in a table of organization." *Coates v. Windham*, 613 S.W.2d 572, 576 (Tex. App.—Austin 1981, no writ).

As for the placement of Section 24a in Article III of the Texas Constitution—entitled "Legislative Department"—we conclude that such placement is not controlling.[5] *See Comptroller v. Landsfeld*, 352 S.W.3d 171, 175 (Tex. App.—Fort Worth 2011, pet. denied) (noting that title of statute—"statute of limitations"—was not controlling in determination of whether statute's requirements were jurisdictional or merely mandatory); *Hill v. Texas Council Risk Mgmt. Fund*, 20 S.W.3d 209, 214 (Tex. App.—Texarkana 2000, pet. denied) ("the title of a statute is not controlling over the unambiguous language which appears in the body of the

---

[5] Nor is the following dictum in the background section of a 2015 opinion from our sister court involving these same parties: "The Texas Ethics Commission (the TEC) is a constitutionally created state agency, which is part of the legislative branch of Texas government, that is charged with administering and enforcing statutes governing elections and related governmental processes." *See Texas Ethics Comm'n v. Sullivan*, No. 02-15-00103-CV, 2015 WL 6759306, at *1 (Tex. App.—Fort Worth Nov. 5, 2015, pet. denied) (mem. op.).

15

statute"); *see also In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010) (citing guidance in Section 311.024 of Code Construction Act that statute's heading "cannot limit or expand the statute's meaning"). Furthermore, the Commission's exercise of administrative, civil enforcement authority under Chapters 305 and 571 of the Government Code is pursuant to a lawful and express delegation in Section 24a(d): "The Commission has the powers and duties provided by law." *See* Tex. Const. art. III, § 24a(d). Besides providing that the Commission has such powers and duties and for the appointment of the Commission's members, the only other topics covered in Section 24a concern the Commission's (1) discretion to "recommend" (for voter approval) the salaries of legislators and (2) mandate to "set the per diem" (which is not to exceed federal-income-tax-deduction amounts) of legislators. *See id.* § 24a(e), (f). We cannot conclude that the text of Section 24a, despite its location in the "Legislative Department" portion of the Constitution, conclusively evidences an intent that the entity falls under the umbrella of the legislative branch.

Moreover, Section 24a creating the Commission describes it as a "state agency," and the Government Code explains that state agencies are part of the executive branch. *See* Tex. Gov't Code § 2004.001(2) ("'State agency' means an office, department, commission, or board of the executive branch of state government."). Other state agencies have been created under Article III but are similarly more appropriately described as executive agencies rather than legislative ones. *See, e.g.*, Tex. Const. art III, §§ 49-b (creating Texas Veterans' Land Board), 49-c (creating Texas Water Development Board); Tex. Nat. Res. Code § 161.011 (designating Veterans' Land Board as "state agency"); Tex. Water Code § 6.011 (describing Texas Water Development Board as "state agency"). Also, other provisions of the Government Code expressly recognize that the Commission functions as an executive agency: Section 326.001

16

defines "legislative agencies" as used in Chapter 326 to include certain enumerated entities (including the Senate and House of Representatives) but expressly excludes from that list the Commission, *see* Tex. Gov't Code § 326.001, and Section 306.008(e)(1) similarly excludes the Commission from its list of "legislative agenc[ies]," *see id.* § 306.008(e)(1).

As for Sullivan's contention that the members of the Commission are "nominated" by the legislative branch, to support his argument that the Commission is a legislative agency, we note that while Section 24a mandates the legislature to compile a list of nominees, the governor and lieutenant governor select six of the eight Commission members, and the governor "may reject all names submitted" and require a new list to be submitted for the four members he appoints.[6] *See* Tex. Const. art. III, § 24a(a)(1)–(4), (b). The fact that the majority of the members of the Commission are appointed by the highest members of the executive branch, *see id.* art. IV, § 1 (listing members comprising executive department), further supports our conclusion that the Commission is an executive agency, not a legislative one. We overrule Sullivan's second issue and hold that the challenged statutes do not violate the separation-of-powers provision.

*Due-process challenge*

In his third issue, Sullivan contends that he has been denied due process because the penalty the Commission sought to enforce against him is actually criminal in nature, not civil, and he was therefore entitled to the type of due process required for criminal prosecutions.

---

[6] The lieutenant governor appoints two members "of different political parties" from "a list of 10 names submitted by the members of the senate from each political party required by law to hold a primary," and the remaining two of the eight members are "appointed by the speaker of the house of representatives from a list of at least 10 names submitted by the members of the house from each political party required by law to hold a primary." Tex. Const. art. III, § 24a(a)(3), (4).

He alternatively argues that the civil penalty was not authorized because he was not first convicted of a criminal offense under Section 305.031. *See* Tex. Gov't Code § 305.031 (providing that intentional or knowing violation of Chapter 305 is Class A misdemeanor or third-degree felony, depending on provision violated).

Sullivan's latter argument runs counter to Section 305.031, which expressly provides, "This section does not prohibit the commission from imposing a civil penalty for a violation." *See id.* § 305.031(e). Similarly, Section 305.032 provides that "[i]n addition to the criminal penalties prescribed by Section 305.031, a person who [violates the registration statute] shall pay a civil penalty in an amount determined by commission rule." *See id.* § 305.032; *see also id.* § 571.173 (broadly granting Commission discretion to "impose a civil penalty" for violation of any law administered and enforced by Commission). The fact that the civil penalty for violation of the registration statute is expressly cumulative of (i.e., "in addition to") the criminal penalty (which requires scienter while the civil penalty does not) negates Sullivan's argument that the civil penalty can be imposed only in the event of a criminal conviction under Section 305.031. *See BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 15 (Tex. 2016) (noting that remedies that are "cumulative" are "in addition to" other remedies that remain in force whether or not they are enforced). Our conclusion is further supported by the fact that the Commission may simultaneously refer a matter for consideration of criminal prosecution to the appropriate prosecuting attorney *and* initiate a civil-enforcement action.[7] *See* Tex. Gov't Code § 571.171(a) ("On motion adopted by an affirmative vote of at least six commission members, the commission may initiate civil enforcement actions and refer matters to the appropriate prosecuting attorney for criminal prosecution."); *see also Ex parte Cronin*, No. 03-06-00016-CR,

---

[7] The record does not indicate that the Commission referred any matters in this case to any prosecuting attorney.

18

2006 WL 2589172, at *2 (Tex. App.—Austin Sept. 7, 2006, pet. ref'd) (mem. op., not designated for publication) (rejecting auctioneer's argument that civil penalty imposed for violation of professional rule incorporated criminal elements because legislature made civil penalty "an alternative to the criminal sanction"); *Ex parte Sheridan*, 974 S.W.2d 129, 133 (Tex. App.—San Antonio 1998, pet. ref'd) ("It is well settled that the legislature 'may impose both a criminal and a civil sanction in respect to the same act or omission,'" but its doing so "is insufficient [alone] to render the [civil penalty] a criminal punishment.").

As for Sullivan's argument that the civil penalty operates effectively as a criminal penalty, we first note that the legislature not only expressly indicated that the penalty is civil (both in the sections' titles and in their texts) but also so indicated impliedly by including a separate section labeled "Criminal penalties." *Compare* Tex. Gov't Code § 305.031 (entitled "Civil Penalty for Failure to Register" and mandating in text that violator of registration statute "shall pay a civil penalty"), *and id.* § 571.173 (entitled "Civil Penalty for Delay or Violation" and providing that Commission "may impose a civil penalty" for violation "of a law administered and enforced by the commission"), *with id.* § 305.032 (entitled "Criminal Penalties" and providing in text that section "does not prohibit the commission from imposing a civil penalty"). In determining whether a penalty is civil or criminal in nature, a reviewing court "must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference of one label or the other." *Ex parte Drake*, 212 S.W.3d 822, 825 (Tex. App.—Austin 2006, pet. ref'd). Here, not only did the legislature expressly indicate a preference for the label "civil penalty," but it explicitly differentiated that type of penalty from the criminal ones. It belies common sense and the plain language of the statutes at issue—especially the two sequential ones in Chapter 305—to conclude that the legislature intended

19

Section 305.032's or 571.173's penalty to be criminal. *See United States v. Ward*, 448 U.S. 242, 251 (1980) (when there is "overwhelming evidence" that legislature "intended to create a civil penalty in all respects" and only "quite weak evidence of any countervailing punitive purpose," it would be "anomalous to hold" that statute "created a criminal penalty").

Although there is a clear expression of legislative intent that Sections 305.032 and 571.173 create civil penalties, Sullivan maintains that a civil penalty can be so punitive in nature as to be transformed into a criminal penalty. *See Hudson v. United States*, 522 U.S. 93, 99–100 (1997) ("Only the clearest proof of punitive intent will transform what the Legislature intended to be a civil penalty into a criminal penalty."). The factors courts employ to make that determination are whether (1) the sanction involves an affirmative disability or restraint, (2) the sanction has historically been regarded as a punishment, (3) the sanction comes into play only upon a finding of scienter, (4) the sanction's operation will promote the traditional aims of punishment-retribution and deterrence, (5) the behavior to which the sanction applies is already a crime, (6) an alternative purpose to which the sanction may rationally be connected is assignable for it, and (7) the sanction appears excessive in relation to the alternative purpose assigned. *Id.*

The civil penalty imposed on Sullivan cannot reasonably be considered an affirmative disability or restraint. *See id.* at 104 (noting that, unlike imprisonment, monetary penalties are not considered "a restraint as that term is normally understood"). He has not demonstrated that the penalty or his failure to pay it has prevented or will prevent him from engaging in any speech. Neither Section 305.032 nor 571.173 contains a scienter requirement, and failure to register as a lobbyist is not already a crime (except upon meeting the scienter requirement in Section 305.031). Although a monetary penalty may act as a deterrent to violations of the registration statute, the mere presence of this purpose is insufficient to render

20

the sanction criminal because such deterrence serves civil as well as criminal goals, such as promoting compliance with the registration statute, in furtherance of the goals of Chapter 571. *See Hudson*, 522 U.S. at 105; *see also Ragsdale v. Progressive Voters League*, 790 S.W.2d 77, 84 (Tex. App.—Dallas 1990) (noting that civil penalty in Election Code "promotes compliance with the provisions of the Code," in furtherance of legislature's goal to protect "free suffrage from undue influence or other improper practice"), *aff'd in part, rev'd in part*, 801 S.W.2d 880 (Tex. 1990) (affirming portion of appellate court's holding that assessed civil penalty). The civil penalty may also serve in part to defray the Commission's enforcement costs, which in this near decade-long dispute may well have surmounted the penalty. The penalty assessed, while more than nominal, is not so large as to be considered excessive in relation to the purposes of Chapter 571 and the Commission's interests in fulfilling its statutory duties by promoting compliance with the laws it is charged with enforcing.[8] On balance, we determine that the civil penalty is not so punitive in its purpose or effect as to make it a criminal penalty. We overrule Sullivan's third issue.

### *Trial court's jurisdiction*

In his fourth issue, Sullivan contends that the trial court lacked jurisdiction over the Commission's claim because the Commission had no standing to enforce the lobbyist-registration statute due to its "lack [of a] legally cognizable injury." He explains that the Commission "has only asserted bare violations of law that purport to offend the sovereignty of the State"—that is, merely a "sovereign injury" rather than a "proprietary injury to the

---

[8] Nor does Sullivan contend that the amount imposed on him is excessive. Rather, he contends that the cap of $5,000 per violation is due only to current Commission rules, which could change at any time to allow for the statutory maximum of three times a lobbyist's annual compensation—amounting in many cases, including this one, to upwards of several hundreds of thousands of dollars. However, we cannot review speculative scenarios.

21

Commission" itself—and that, therefore, the Commission lacks standing to assert a sovereign injury on behalf of the State. Instead, he contends, the State of Texas was required to bring the enforcement action against him.

The Commission is expressly authorized by statute to bring administrative-enforcement actions, as State agencies routinely are. *See* Tex. Gov't Code § 305.035(a) ("The commission, the attorney general, or any county or district attorney may enforce this chapter."); *Roman Forest Pub. Util. Dist. No. 4 v. McCorkle*, 999 S.W.2d 931, 932 (Tex. App.—Beaumont 1999, pet. denied) (holding that utility district had standing and was appropriate party to bring suit to enforce rules and regulations that legislature authorized it to enforce under Water Code; this gave district "a justiciable interest peculiar to [it]"); *see also* Tex. Gov't Code §§ 305.032 (providing for Commission's assessment of civil penalties), 571.061(a) ("The [C]ommission shall administer and enforce . . . Chapter[] 305."), .121(a) ("The [C]ommission may . . . render decisions on complaints or reports of violations as provided by this chapter."), .173 (also providing for Commission's assessment of civil penalties). Sullivan has not cited any persuasive authority to the contrary. We accordingly overrule his fourth issue.

***Propriety of summary judgment***

In his fifth issue, Sullivan argues that the Commission failed to meet its summary-judgment burden to establish its right to judgment as a matter of law that he violated the registration statute. *See* Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). To be entitled to summary judgment, the Commission was required to conclusively prove that Sullivan (1) received compensation of at least $1,000 (2) from another person (3) to communicate directly with a member of the legislative or executive branch (4) to influence legislation or administrative action. *See* Tex. Gov't Code

22

§ 305.003(a)(2); 1 Tex. Admin. Code § 34.43(a) (2008) (during years at issue, providing compensation threshold of $1,000 received in calendar quarter to trigger registration requirement).

On appeal, Sullivan does not directly dispute the Commission's proof of the first element—the amount of his compensation—but merely reasserts his constitutional argument about a "single act of speech" allegedly being enough to require registration, which we have already disposed of. In any event, the summary-judgment evidence—in the form of tax records and the deposition testimony of Empower Texans's corporate representative—conclusively established that Sullivan was compensated by Empower Texans for each quarter of 2010 and 2011 in amounts in excess of the then-applicable $1,000 threshold.

As to the second requirement—that Sullivan have received his compensation "from another person"—Sullivan argues that he effectively *was* Empower Texans (by virtue of being its officer and director) and therefore that he was not speaking on behalf of "another person" as required by Section 305.003(a)(2) but on behalf of himself. Again, however, Sullivan reasserts his constitutional argument that the statute is overly broad—that it "would subject any person who received compensation *from almost any source*, including their own unincorporated business or social club, to a significant fine if they engaged in a *single communication* with their elected officials in their role as a business owner, employee, or club member without paying the speech registration fee." He does not cite any authority supporting his bare assertion that he and Empower Texans are the same "person" or entity for purposes of the registration statute, and he does not allege that Empower Texans is his alter ego or sole proprietorship. Rather, as the Commission argues, the statute defines "person" to include a "corporation," *see id.* § 305.002(8), which necessarily includes Empower Texans, and it is blackletter law that corporations have a separate legal existence from their owners, *see, e.g.*, *Hoffmann v. Dandurand*, 180 S.W.3d 340,

23

347 (Tex. App.—Dallas 2005, no pet.) ("Generally, a corporation is a separate legal entity that insulates its owners or shareholders from personal liability."). The evidence conclusively established that Empower Texans is a nonprofit corporation—i.e., a "person" under the statute— and is the "person" from whom Sullivan received the compensation at issue.

As to the third requirement—that Sullivan have received the compensation from Empower Texans to communicate directly with members of the legislative branch—Sullivan argues that his mere sending of e-mail "blasts" to "a group of subscribers numbering in the tens of thousands" "cannot be considered direct communications." The statute defines "communicates directly with" to mean "contact in person or by telephone, telegraph, letter, facsimile, electronic mail, or other electronic means of communication." Tex. Gov't Code § 305.002(2). "Member of the legislative branch" means a "member, member-elect, candidate for, or officer of the legislature or of a legislative committee, or an employee of the legislature." *Id.* The evidence the Commission proffered in support of its summary-judgment motion conclusively established that Sullivan sent numerous e-mails directly from himself, on behalf of Empower Texans, to members of the legislative branch, including some that were addressed directly to particular members of the legislature. Moreover, the statute does not distinguish between e-mails sent as "blasts" or to solely one recipient. We decline to construe the statute as Sullivan advocates.

Sullivan argues that because there is no evidence of any contract providing him compensation in exchange specifically for lobbying activities on behalf of Empower Texans, the Commission failed to meet its summary-judgment burden. However, we initially note that the statute does not require any express compensation contract for a person to fall under its reach. Moreover, the registration statute expressly provides that the element requiring another person to pay a lobbyist to engage in lobbying communications may be met when an employee has made

24

such communications "as part of his regular employment." *See id.* § 305.003(b); *see also* Tex. Att'y Gen. Op. No. JH-0583 (1975) (opining that it is "sufficient" to meet Section 305.003(b)'s requirement if employee, "as an incident of his employment," makes lobbying communications "on behalf of and at the express or implied direction of" employer).[9]  In its motion, the Commission cited the deposition of Empower Texans's chief operating officer, Dustin Matocha, in which Matocha testified that Sullivan was president and CEO of the company during 2010 and 2011, acting as "the executive that led all of the employees."  In that role and during those years, Sullivan sent e-mails on behalf of the company to members of the legislature and their staff. The e-mails "concern[ed] matters pending before the Texas state legislature."  Additionally, the Commission cited an article penned by Sullivan appearing on Empower Texans's website acknowledging that the company's "communications with legislators are an extension of [its] discussions with Texas' citizens."  We conclude that such evidence conclusively established that Sullivan made the communications at issue "as part of his regular employment" with Empower Texans and that the Commission, therefore, established the third requirement of its claim.

Lastly, as to the fourth requirement, we conclude that the Commission's evidence conclusively established that Sullivan's communications were made "to influence legislation." *See* Tex. Gov't Code § 305.003(a)(2).  The statute broadly defines "legislation" to include "a

---

[9] While the registration statute provides an exception to registration for individuals who demonstrate they spend "not more than 26 hours, or another amount of time determined by" Commission rule in a calendar quarter engaging in lobbying activity, *see* Tex. Gov't Code § 305.003(b-3); 1 Tex. Admin. Code § 34.43(b) (Tex. Ethics Comm'n, Compensation and Reimbursement Threshold) (2011) (explaining that for purposes of Section 305.003, threshold for compensated time spent engaging in lobby activity is 5% in calendar quarter), during this litigation Sullivan and the Commission filed a Rule 11 agreement containing a stipulation that Sullivan spent more than the minimum of compensated time engaging in lobbying activity during the years at issue and that the Commission would not "be required to prove as any part of [its] claims" that Sullivan's time alleged to be "spent engaging in lobby activity" constituted "more than 5.0%" of his "compensated time during a calendar quarter."

bill, resolution, amendment, nomination, or other matter pending in either house of the legislature," as well as "any matter that is or may be the subject of action by either house or by a legislative committee, including the introduction, consideration, passage, defeat, approval, or veto of the matter." *See id.* § 305.002(6). Sample communications attached to the Commission's summary-judgment motion indicate that Sullivan outlined issues that Empower Texans anticipated would be considered in the 82nd legislative session and encouraged the legislative recipients to make decisions consistent with Empower Texans's priorities and interests by, for example, "oppos[ing] the creation of new taxes, granting additional taxing authority, or creating any new taxing entities." While Sullivan does not challenge the Commission's evidence on this requirement, he asks this Court to construe the statute to require that the communications be "solely" intended to influence legislation. We cannot. Moreover, Sullivan judicially admitted that this requirement was met when in his prior TCPA motion he argued that his communications were about matters of public concern because they "pertained to legislative proceedings and were in connection with issues under consideration by the Legislature or were reasonably likely to encourage consideration by the Legislature."

Because the summary-judgment evidence conclusively established the Commission's claims that Sullivan was required to register in 2010 and 2011 (and undisputedly did not), we overrule Sullivan's fifth issue.

### *Amount of penalty assessed*

In his final issue, Sullivan contends that the trial court erred by summarily imposing the maximum penalty without submitting the matter to a jury. He cites a recent opinion from this Court to support his argument that the amount of penalty to be assessed is a material fact issue. *See Villarreal v. State*, No. 03-18-00752-CV, 2020 WL 6576158, at *9 (Tex.

26

App.—Austin Nov. 10, 2020, no pet.) (mem. op.). We agree with Sullivan that the trial court erred in imposing the maximum penalty as a matter of law instead of submitting the issue, which we conclude is a material fact issue, to a jury per Sullivan's request.

In its summary-judgment motion, after arguing that it was entitled to summary judgment that Sullivan had violated the registration statute, the Commission prayed that the trial court enter judgment against Sullivan "for the civil penalty provided for by statute." After granting the Commission summary judgment on its claim that Sullivan had violated the registration statute, the trial court rendered final judgment that "Sullivan is liable to the Commission for a $5,000 civil penalty for his failure to register as a lobbyist in 2010, and a $5,000 civil penalty for his failure to register as a lobbyist in 2011"—the maximum penalty permissible under Section 571.173. But, Section 571.173 does not expressly "provide for" any penalty at all, nor does it specify the amount of any penalty that is assessed. *See* Tex. Gov't Code § 571.173. Rather, it provides a penalty range—should a penalty be imposed—up to the greater of $5,000 or "triple the amount at issue." *See id.* ("The commission may impose a civil penalty of not more than $5,000 or triple the amount at issue under a law administered and enforced by the commission, whichever amount is more, for . . . a violation of a law administered and enforced by the commission.").[10] While the statute makes both the imposition and the amount of a penalty discretionary on the part of the Commission in the first instance, we conclude that when a Commission final order is appealed to the district court for a "trial de novo," the

---

[10] *See also* Tex. Gov't Code § 305.032 (setting civil penalty for failure to register as "amount determined by commission rule . . . but not to exceed an amount equal to three times the compensation, reimbursement, or expenditure"). The parties have not cited any Commission rules specifying the civil penalty for failure to register, nor have we found any, and we therefore refer to the general civil penalty provided in Section 571.173.

issue of the amount of penalty, if any, becomes one of fact, and the trial court therefore erred in assessing the maximum penalty as a matter of law. We conclude so for three reasons.

First, upon Sullivan's filing of his appeal of the Commission's final order, that final order was automatically vacated—in other words, there was no longer (1) a finding that he had violated the registration statute or (2) any assessment of a penalty. *See Sullivan*, 551 S.W.3d at 852 ("As a result of Sullivan's petition, the Commission's final decision was automatically vacated."); *see also* Tex. Gov't Code § 2001.176(b)(3) ("[T]he filing of the petition vacates a state agency decision for which trial de novo is the manner of review authorized by law[.]"). Thus, upon its summary determination that Sullivan violated the registration statute, the trial court *could have* rendered judgment as a matter of law per the Commission's prayer—i.e., "as provided for by statute"—but *only if* the statute (or a Commission rule) explicitly provided for a specific penalty. It does not. Instead, it provides a penalty range (from zero to the greater of $5,000 or "triple the amount at issue"). *See id.* § 571.173.

Secondly, the trial de novo Sullivan is afforded by statute requires the trial court to "try all issues of fact and law in the manner applicable to other civil suits in this state" and entitles him to "a jury determination of any issue of fact on which a jury determination is available in other civil suits in this state." *See id.* § 571.133(d). We previously acknowledged in *Villarreal* that a mandatory penalty within a specified statutory range is a question of fact, but the State in that case had properly "remove[d] the material fact issue as to the per diem amount of penalty by stipulating [in its summary-judgment motion] to the minimum per diem amount." *See Villarreal*, 2020 WL 6576158, at *9. While the statute at issue here (1) is discretionary, not mandatory; and (2) has no minimum to which the Commission could have stipulated, we deem

28

those differences immaterial with respect to *Villarreal*'s acknowledgment that the assessment of a civil penalty within a statutory range is generally a material fact issue. *See id.*

Finally, Subchapter F—which contains Section 571.173—specifies mandatory factors the Commission "shall consider" in assessing a civil penalty. *See* Tex. Gov't Code § 571.177.[11] This Court has previously held that it is the factfinder who "is tasked with determining the amount of a civil penalty" to be assessed within a prescribed statutory range when the statute lists factors the factfinder must consider. *See In re Volkswagen Clean Diesel Litig.*, 557 S.W.3d 78, 84–85 (Tex. App.—Austin 2017, no pet.); *cf. Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 851 (Tex. App.—Austin 2002, pet. denied) (reviewing district court's assessment of penalty within statutory range under abuse-of-discretion standard but noting that statute did not "provide a rule or principle by which [a] district court [i]s to be guided in assessing a penalty," unlike statutory factors outlined here). Although the statutes at issue in both *Villarreal* and *In re Volkswagen* expressly identify the "court or jury"

---

[11] Section 571.177 provides,

The [C]omission shall consider the following factors in assessing a sanction:

(1) the seriousness of the violation, including the nature, circumstances, consequences, extent, and gravity of the violation;

(2) the history and extent of previous violations;

(3) the demonstrated good faith of the violator, including actions taken to rectify the consequences of the violation;

(4) the penalty necessary to deter future violations; and

(5) any other matters that justice may require.

Tex. Gov't Code § 571.177.

as the factfinder tasked with determining the "proper" penalty within the respective statutory ranges, *see Villarreal*, 2020 WL 6576158, at \*9; *In re Volkswagen*, 557 S.W.3d at 84–85—and here Section 571.173 places the initial assessment of a penalty within the Commission's discretion—we fail to see why the determination of the amount of penalty, if any, would not become an issue for the jury when the statutory scheme expressly vacates the Commission's order, affords the alleged violator a trial de novo, and requires a jury determination of all issues of fact on which a jury determination is available in other civil suits.

We believe that the statutory scheme, viewed as a whole, compels the conclusion that Sullivan is entitled to a jury trial on the amount of civil penalty, if any. Accordingly, we sustain Sullivan's sixth issue and hold that the trial court erred in its judgment assessing a penalty as a matter of law.

### CONCLUSION

We reverse the portion of the trial court's summary judgment assessing a total civil penalty of $10,000 and remand the issue of the penalty amount, if any, for further proceedings in accordance with this opinion. We affirm the remainder of the summary judgment.

_____
Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Smith
  Concurring Opinion by Justice Goodwin

Affirmed in Part; Reversed and Remanded in Part

Filed:  August 31, 2022